UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT W. KEOGH, as he is ADMINISTRATOR, and FESTUS JOYCE AND JOHN S. DESMOND, as they are TRUSTEES, SHEET METAL WORKERS LOCAL UNION NO. 17 INSURANCE AND ANNUITY FUNDS; et al., <br><br>Plaintiffs, <br><br>v. <br><br>NEW ENGLAND VENTILATION CO., INC., <br>Defendant, <br><br>and <br><br>J.C. HIGGINS CORP., et al. <br>Reach and Apply Defendants, <br><br>and <br><br>BANKNORTH N.A. and SOVEREIGN BANK, <br>Trustees. | C.A. No. 05-11330 WGY |

## AFFIDAVIT OF WALTER SHAW

WALTER SHAW declares and says as follows:

1.    I am the Billing and Eligibility Manager of the Sheet Metal Workers' National Pension Fund ("NPF" or "Pension Fund"), and I am employed by Associated Third Party Administrators, Inc., the administrative manager of the Pension Fund. Through a series of administrative service agreements, the Pension Fund monitors the remittance and collection of monthly fringe benefit contributions for the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI") (f/k/a National Training Fund for the Sheet Metal and Air

163505-1

Conditioning Industry), Sheet Metal Workers' International Association Scholarship Fund ("SMWIASF"), National Energy Management Institute Committee ("NEMI") and Sheet Metal Occupational Health Institute Trust Fund ("SMOHI") (ITI, SMWIASF, NEMI and SMOHI together with the NPF are jointly referred to as "National Funds"). As the Billing and Eligibility Manager, I am familiar with the payment histories of employers obligated to make contributions to the National Funds. I make this affidavit in support of the request for delinquent contributions, interest, contractual late charges, liquidated damages, and injunctive relief set forth in the Motion for Default Judgment filed in this case.

2. NPF, ITI and SWMIASF are jointly trusteed trust funds established and maintained under 29 U.S.C. § 186(c)(15) and "multiemployer plan[s] and "employee benefit plan[s]" within the meaning of 29 U.S.C. § 1002(37),(1),(2) and (3). NEMI and SMOHI are jointly trusteed trust funds established and maintained under 29 U.S.C. § 186(c).

3. Pursuant to collective bargaining agreements ("Labor Contract") with Sheet Metal Workers' International Association Local Union No. 17 ("Local 17"), New England Ventilation Co., Inc. ("Company" or "Defendant") is obligated to submit monthly remittance reports and pay contributions to the National Funds for time worked or paid to their covered employees. The Labor Contract further binds Defendant to the terms and conditions of the Trust Agreements and Rules and Regulations.

4. The National Funds' records show that Defendant failed to remit its contributions in a timely manner for the period February 2005 through June 2005.

5. Based on my review of the National Pension Funds' records, including the Trust Agreement and Rules and Regulations, I have determined that this Defendant owes at least $189,977.42, which includes the following:

(a) Contributions of $146,094.25 for the period March 2005 through June 10, 2005.

(b) Interest of $11,751.06 calculated pursuant to Sec. III (A) of the Rules and Regulations through January 27, 2006.

(c) Liquidated damages of $29,218.39 calculated pursuant to Sec. III (B) of the Rules and Regulations.

(d) Late fees of $2,913.72.

*See*, Exhibit 1.

6.      Despite a continuing contractual obligation to do so, Defendant routinely has failed to submit timely contributions and monthly remittance reports. The National Funds and their Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employer contributions and the earnings, which the National Funds receive by investing these contributions, comprise the assets from which the National Funds pay benefits. Employees of contributing employers continue to accrue benefit eligibility regardless of whether their employers pay the contributions to the National Funds on the hours they work or are paid. The National Fund's, especially the Pension Fund's, obligation to provide these benefits to otherwise eligible employees is absolute and continues even if the employers fail to pay their required contributions. When employers fail to pay their contributions or do not pay them timely, the National Funds are deprived of the investment income they otherwise could have earned. In addition, the National Funds also must engage in time consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer and the local union, investigating other sources for collection (i.e. labor and materialmens bonds, mechanics liens, possible claims under varying State construction lien laws) and attempting to calculate

delinquency amounts through other sources (e.g. paystubs, job steward's reports, and certified payrolls on publicly funded projects) if available. The National Funds also have to process benefit eligibility and benefit claims manually so that participants employed by the delinquent employer are not deprived of benefits to which they are otherwise entitled. The actual losses and added costs (both in terms of dollar amounts, capital, and manpower) incurred by the National Funds in connection with an employer contribution delinquency are not capable of precise determination, but are substantial. The refusal of an employer to contribute as it is bound means irreparable harm and injury to the National Funds -- an obligation to make benefit payments to employees without the necessary contributions from the employer to cover those benefits. This also deprives the National Funds of assets that would otherwise be available to pay claims of employees of other employers that have timely paid their contribution obligations. The Defendant in this case, therefore, should be required to submit timely current contributions and remittance reports in the future and to immediately submit all remittance reports and contributions that are outstanding on the date judgment is entered in the present proceeding.

I declare under penalty of perjury in accordance with 28 U.S.C. §1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on: 1/24/06

_____
WALTER SHAW

# EXHIBIT 1

Company owes the Funds the sum of $258,720.77. This amount includes the following for each of the Funds:

| Fund[1] | Contributions[2] | Interest[3] | Liquidated Damages[4] | Late Fees | Attorneys' Fees[5] | TOTAL |
|---|---|---|---|---|---|---|
| NPF | 141,431.74 | 11,375.98 | 28,286.25 | 2,913.72 | 2,374.16 | 186,381.85 |
| ITI | 3,108.39 | 250.02 | 621.59 | 0.00 | 0.00 | 3,980.00 |
| NEMI | 777.06 | 62.52 | 155.33 | 0.00 | 0.00 | 994.91 |
| SMOHI | 518.06 | 41.68 | 103.52 | 0.00 | 0.00 | 663.26 |
| SMWIASF | 259.00 | 20.86 | 51.70 | 0.00 | 0.00 | 331.56 |
| SASMI | 35,750.26 | 1,568.88 | 28,440.21 | 0.00 | 609.84 | 66,369.19 |
| TOTAL | 181,844.51 | 13,319.94 | 57,658.60 | 2,913.72 | 2,984.00 | $258,720.77 |

[1] The NPF, ITI, SMWIASF, NEMI and SMOHI are referred to jointly as "National Funds."
[2] Calculated for the period March 2005 through June 2005 for the National Funds and March 2005 through June 2005 for SASMI.
[3] Calculated through January 27, 2006.
[4] Liquidated damages are calculated at twenty percent (20%) of the contribution amount for contributions paid more than thirty (30) days after the due date.
[5] Incurred in this matter through January 20, 2006.

163505-1

2